## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Heather Bernstein, individually and on behalf of all others similarly situated**, | |
| **Plaintiff,** | **First Amended Class Action Complaint** |
| **v.** | |
| **Conopco, Inc.,** | **C.A. NO. 3:21-cv-10160** |
| **Defendant.** | |

Heather Bernstein makes the following factual, as well as legal, allegations based upon personal knowledge as to all matters related to herself, and upon information and belief, obtained in part from an investigation conducted by her attorneys, as to all other matters:

### INTRODUCTION

1.     Heather Bernstein (hereafter also referred to as "Plaintiff"), individually and on behalf of all other similarly situated Massachusetts individuals (hereafter also referred to as "Class" or "Class Members"), brings this putative class action lawsuit against Conopco, Inc. (hereafter also referred to as "Conopco" or "Defendant").

2.     Defendant labels, markets, and sells a deceptively labeled food product, known as a "Vanilla Bean" low fat ice cream, under the brand name of "Breyers Delights" (hereafter also referred to as "Product").

1

3.     The Product's front label (hereafter also referred to as "Principal Display Panel") prominently and conspicuously depicts the words "Vanilla Bean" and images of a flowering vanilla plant and its bean pods.

4.     Despite Defendant's characterization of the Product as a "Vanilla Bean" ice cream and the inclusion of images of a flowering vanilla plant with its bean pods, the Product does not contain vanilla beans as one of its characterizing, but not exclusive, ingredients, which contributes to its vanilla bean taste (hereafter also known as its "Characterizing Flavor").

5.     Instead, the Product derives its Characterizing Flavor from an ingredient known as "Natural Flavor" as identified in small print on the Product's ingredient list located on the label on the backside of the Product.

6.     Defendant's actions lead reasonable consumers to commonly expect that the Product would, in fact, contain vanilla beans, not as an exclusive ingredient, but as one of its characterizing ingredients, contributing to the Product's Characterizing Flavor.

7.     Defendant's failure to include vanilla beans as one of its characterizing, but not exclusive, ingredients is deceptive.  Defendant's actions mislead reasonable consumers in their purchasing decisions.

8.     Defendant's failure to identify on the Product's front label that the Product does not contain vanilla beans as one of its characterizing, but not exclusive, ingredients is deceptive. Defendant's actions mislead reasonable consumers in their purchasing decisions.

9.     Plaintiff and the Class purchased Defendant's deceptively labeled Product, on the reasonable, but the mistaken, belief that the Product contained vanilla beans as one of its characterizing, but not exclusive, ingredients, which contributes to its Characterizing Flavor.

10.     Plaintiff alleges that Defendant's Product is not compliant with federal food labeling laws and regulations and state food labeling laws and regulations.

11.     Plaintiff alleges that Defendant's conduct violates Massachusetts Deceptive Trade Practices Act, 93A (hereafter also known as "Consumer Protection Act") and is otherwise grounds for restitution based on unjust enrichment.

12.     Plaintiff seeks to remedy Defendant's deceptive labeling, marketing, and selling of its Product.

13.     Plaintiff seeks damages, injunctive relief, and a jury trial.

## PARTIES

14.     Plaintiff is currently, and has been throughout the Class Period, a Massachusetts resident.  During the Class Period, Plaintiff purchased Defendant's Product on several occasions based on the representation and reasonable belief that the Vanilla Bean ice cream contained vanilla beans.

15.     Defendant is a New York corporation with a principal place of business in Englewood Cliffs, New Jersey.

## JURISDICTION AND VENUE

16.     Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2).   Diversity jurisdiction exists as Defendant is a New York corporation with its principal place of business in New Jersey and Plaintiff is a resident of Massachusetts.   The amount in controversy exceeds $5,000,000 for Plaintiff and the Class, exclusive of interest and costs, reaped by Defendant from their transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by the injunctive and equitable relief sought.

17.     Jurisdiction is proper according to the Class Action Fairness Act of 2005 (hereafter also referred to as "CAFA").  28 U.S.C. § 1332(d)(2).

18.     Venue is proper within this judicial district under 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred in this judicial district.

## SUMMARY OF THE CASE

19.     The Product's front label (hereafter also referred to as "Principal Display Panel") prominently and conspicuously displays the words "Vanilla Bean" (hereafter also referred to as "Label Wording").  See Exhibit "A" for an image of the Product's Principal Display Panel.

20.     The Principal Display Panel prominently and conspicuously displays an image of a flowering vanilla plant and an image of a flowering vanilla plant's vanilla bean pod (hereafter images of plant and pods referred to as "Label Vignettes").

21.     The Principal Display Panel notably omits any qualification of the Label Wording, such as by use of the word "flavor" or "flavored" (hereafter also referred to as "Label Omissions"), that would indicate to reasonable consumers that the Product does not contain enough vanilla beans to impart the Product's characterizing vanilla flavor.

22.     The Label Wording, Label Vignettes, and Label Omissions (hereafter collectively referred to as "Deceptive Labeling") lead reasonable consumers to commonly expect that the Product would, in fact, contain vanilla beans, not as an exclusive ingredient, but as one of its characterizing ingredients, contributing to the Product's Characterizing Flavor.

23.     Despite consumers' expectations that the Product would contain vanilla beans, not as an exclusive ingredient, but as one of its ingredients, contributing to the Product's Characterizing Flavor, the Product does not, in fact, contain vanilla beans.

4

24.     Instead, the Product contains "natural flavor" as the ingredient that imparts the Product's Characterizing Flavor.  See Exhibit "B" for an image of the Product's ingredient list.

25.     Any food product that is expected to contain its characterizing ingredient but does not, instead is flavored, must disclose that fact to consumers on the Product's front label. Failure to do so misleads reasonable consumers into believing they are purchasing a food product with qualities it does not have and violates the law.

26.     The deceptively labeled Product has misled Plaintiff and the Class to purchase the Product at a "price premium" based upon the reasonable, but mistaken, belief that the Product contained vanilla beans, not as an exclusive ingredient, but as one of its ingredients, contributing to the Product's Characterizing Flavor.

27.     The Deceptive Labeling misleads reasonable consumers to purchase the Product on the reasonable belief that the Product contained vanilla beans as one of its ingredients contributing to the Product's Characterizing Flavor.

28.     Defendant knows that the Product contains "natural flavor" and not "vanilla beans."

29.     Defendant knows that reasonable consumers rely on material representations and omissions on a food product's front label.

30.     Properly indicating that the Product is flavored is not only a legal requirement, but it is a material term on which a reasonable consumer rely.

31.     Defendant intends that consumers rely upon the Product's Principal Display Panel, and reasonable consumers, do in fact, rely on the Product's front label to honestly state the nature of its ingredients.

32.     Defendant's deception flows from the fact that the Product does not disclose, on the Product's front label, that the Product is a flavored product that does not contain vanilla as an ingredient in the form of vanilla beans.

33.     Properly indicating that the Product is flavored is not only a legal requirement, but it is a material term on which a reasonable consumer rely.

34.     Additionally, since the Product does not disclose that vanilla is a flavor and not an ingredient, the Product's labeling is not in compliance with federal food labeling laws and regulations and identical state food labeling laws and regulations.

### Plaintiff Purchased Defendant's Product on Several Occasions at Market 32 Located at 555 Hubbard Avenue in Pittsfield, Massachusetts

35.     Plaintiff made several purchases of the Product over the past several years from a supermarket known as Market 32 located at 555 Hubbard Avenue in Pittsfield, Massachusetts.

### Plaintiff  Suffered Damages as an Economic Injury and Paid a Price Premium for the Product's Purchase

36.     Plaintiff sought to buy a product that was lawfully labeled, marketed, and sold.

37.     Plaintiff saw and relied on Defendant's misleading labeling of its Product.

38.     Plaintiff believed that the Product purchased contained vanilla beans as one of its characterizing, but not exclusive, ingredients which contributes to the Product's Characterizing Flavor.

39.     Plaintiff believed that the Product was lawfully marketed and sold.

40.     In reliance on the claims made by Defendant regarding the qualities of its Product, Plaintiff paid a price premium.

41.     As a result of Plaintiff's reliance on Defendant's deceptive actions, Plaintiff received a Product lacking the promised ingredient that she reasonably believed it contained.

42.     Plaintiff received a Product that was unlawfully marketed and sold.

43.     Plaintiff paid the retail price offered for the Product's purchase each time she purchased the Product.

44.     Plaintiff lost money and thereby suffered injury as she would not have purchased the Product or paid as much for it.

45.     Defendant knows that the inclusion of characterizing ingredients is material to a reasonable consumer's purchasing decision.  Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Product she purchased or an amount attributable to the deception.

46.     By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

47.     Plaintiff, however, would be willing to purchase the product again in the future should she be able to rely on Defendant's marketing as truthful and nondeceptive.

**Reasonable Consumers Consider a Food Product's Front Label's Words and Images Material to their Purchasing Decisions**

48.     A food product's front label matters to reasonable consumers purchasing choices.  A food product's front label is the most significant part of a food product's label that affects reasonable consumers purchasing decisions as consumers attempt to quickly make informed purchasing decisions. [1]

---

[1] See, e.g. Mark Becker, et al, Front of Pack Labels Enhance Attention to Nutrition Information in Novel and Commercial Brands, Food Policy Volume 56, October 2015, Pages 76-86. Available at https://doi.org/10.1016/j.foodpol.2015.08.001 ("Our results provide clear evidence that FOP labels are more effective at attracting attention than the traditional NFP [Nutrition Facts Panel], and that this advantage is attributable to both the location").

49.     An FDA survey found that sixty-seven percent (67 %) of respondents used the front label to make purchasing decisions.[2]

50.     Additionally, other studies have also found that reasonable consumers rely upon front labels.  One such study indicated that reasonable consumers consider that front label representation makes a "strong impact on their food purchases.|"[3]

### Consumers Consider a Food's Characterizing Ingredients as Very Important to the Food Product's Value

51.     "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient…. is very important to the value of the product and thus to the consuming public."[4]

52.     The FDA Commissioner, in January 1973, published a proposal to revise the requirements contained §1.12 of the FDCA (now §101.22) concerning the labeling of flavor contained in food products.  The FDA solicited public commentary, subsequently summarized that commentary, and published responses to that commentary.

53.     The FDA Cinnnussuiber made clear that the purpose of these regulations was to provide labeling uniformity among marketplace participants to prevent consumer confusion and deception.  See Federal Register Vol. 38, No. 231, December 3, 1973.

54.     The FDA Commissioner indicated that "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation" when a food product displays

---

[2] Hawley, K. L., Roberto, C. A., Bragg, M. A., Liu, P. J., Schwartz, M. B., & Brownell, K. D. (2013). The Science On Front-Of-Package Food Labels. Public Health Nutrition, 16(3), 430–439. Available at http://doi.org/10.1017/S1368980012000754.

[3] Healthy Through Presence or Absence, Nature or Science? A Framework for Understanding Front-of-Package Food Claims, Journal of Public Policy & Marketing 2019, Vol. 38(2) 172-191 available at https://journals.sagepub.com/doi/pdf/10.1177/0743915618824332.

[4] Federal Register Vol. 38, No. 231, December 3, 1973.

a flavor representation on the food product's front label. 38 Fed. Reg. at 33286. "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient is not at all subtle, and is very important to the value of the product and thus to the consuming public." Id. at 33285.

55.    In 1993, the FDA considered and proposed amendments to specific FDCA regulations.  Once again, the FDA reconfirmed the function and importance of 21 C.F.R. §101.22 and indicated that  21 C.F.R. §101.22 is "intended to ensure that the label communicates essential information to consumers. These provisions are intended to provide manufacturers with flexibility for labeling products while providing consumers with information that they need to determine the nature of the product. The agency concludes that both kinds of label information discussed here are essential to adequately describe the nature of the product. One type of information informs the consumer when flavoring substances have been added to the product. The other type describes other aspects of the basic nature of the product." 58 FR 2897, *2919. Ultimately, "….a consumer who wants the food because of its particular…. flavor is entitled to examine a label that reveals facts material in light of the representations made…." 58 Fed. Reg. 2897 *2898.

56.    In making food purchasing decisions, reasonable consumers rely on the words and images on a product's front label to inform them about its flavor and ingredients.  The presence of real ingredients in food products, such as vanilla beans, has a material bearing on consumers' purchasing decisions.  When reasonable consumers purchase a food product labeled as containing a particular ingredient, they reasonably believe it contains the particular food ingredient.  When reasonable consumers purchase a food product that does not contain its characterizing ingredient, the food product is considered misbranded because it leads reasonable consumers to believe that the food product contains the ingredient, when in fact, it does not.

9

57.      Correctly indicating that a food product is flavored is not only a legal requirement, but it is a material term on which a reasonable consumer would rely. Moreover, a comparison of Defendant's Product to marketplace competitors, whose labels comply with the law, sheds further support for Plaintiff's position that Defendant's Product is misbranded.

58.      Plaintiff would have paid less for the Product or would not have bought the Product if she had known that the Product did not contain vanilla beans at the time of purchase.

59.      The FDA Commissioner, in January 1973, published a proposal to revise the requirements contained §1.12 of the FDCA (now §101.22) concerning the labeling of flavor contained in food products.  The FDA solicited public commentary, subsequently summarized that commentary, and published responses to that commentary, and made clear that the purpose of these regulations was to provide labeling uniformity among marketplace participants to prevent consumer confusion and deception.  See Federal Register Vol. 38, No. 231, December 3, 1973.

60.      The FDA Commissioner indicated that "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation" when a food product displays a flavor representation on the food product's front label. 38 Fed. Reg. at 33286. "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." Id. at 33285.

61.      In making food purchasing decisions, reasonable consumers reasonably rely on the words and images on a product's front label to inform them about a food product's flavor and ingredients.  The presence of real ingredients in food products, such as vanilla beans, has a material bearing on consumers' purchasing decisions.  When reasonable consumers purchase a food product labeled as containing a particular ingredient, they reasonably believe it contains the particular food

ingredient.   When reasonable consumers purchase a food product that does not contain its characterizing ingredient, the food product is considered misbranded because it leads reasonable consumers to believe that the food product contains the ingredient, when in fact, it does not.

62.    Correctly indicating that a food product is flavored is not only a legal requirement, but it is a material term on which a reasonable consumer would rely. Moreover, comparing Defendant's Product to marketplace competitors, whose labels comply with the law, supports Plaintiff's position that Defendant's Product is misbranded.

63.    Plaintiff would have paid less for the Product or would not have bought the Product if she had known at the time of purchase that the Product did not contain vanilla beans or enough vanilla beans to independently characterize the Product.

### A Food Product's Ingredients that Contribute to a Food Product's Flavor is a Material Consideration to Reasonable Consumers' Purchasing Decisions

64.    Reasonable consumers consider it important to know what ingredients are in food products to inform their purchasing decisions.[5]

65.    A report from the Food Marketing Institute in 2018 found that 93% of consumers find it significant for food manufacturers "to provide detailed information about what is in food and how it's made."[6]

### Public Policy Concerns for Food Labeling Issues

66.    The legal basis for Plaintiff's claims has been a pillar of American jurisprudence for nearly a century. See, *United States v. Hoxsey Cancer Clinic*, 198 F. 2d 273, 281 (5th Cir. 1952), cert denied, 344 U.S. 928 (A food is misbranded if it appears that anyone representation is false or

---

[5] Top Trends Driving Change In The Food Industry, Forbes, February 16, 2019, available at https://www.forbes.com/sites/juliabolayanju/2019/02/16/top-trendsdriving-change-in-the-food-industry/?sh=302c9e636063.

[6] The State of Transparency - 2016 vs 2018, Label Insight, September 18, 2018, available at https://blog.labelinsight.com/the-state-of-transparency-2016-vs-2018.

misleading); *Libby, McNeill & Libby v. United States*, 148 F. 2d 71 (2d Cir. 1945) (A food product may be subject to condemnation even though it is not deleterious); *United States v. An Article of Food*, 377 F. Supp. 746, 748 n.4 (E. D. N. Y. 1974) ("The statute ... condemn[s] every statement, design and device which may mislead or deceive," citing *United States v. 95 Barrels Cider Vinegar*, 265 U.S. 438, 442-443 (1924)).

67.    Food labeling claims, in particular misbranding claims, have been an essential concern of public policy, well-settled Federal Law, and the United States Courts for nearly a century. Federal Law "condemns every statement, design, and device which may mislead or deceive." *United States v. 95 Barrels Cider Vinegar*, 265 U.S. 438, 442-443 (1924). Lack of informative food labeling was of great concern to the White House Conference of Food Nutrition and Health. The FDA commissioner proposed that disclosing ingredients is material and necessary for consumers to choose between two competing products. See 37 F.R. 12327. The objective was to provide consumers information on food labels to make reasoned and informed shopping decisions. *American Frozen Food Institute v. Mathews*, 413 F. Supp 548, 550-551 (1976).

### Plaintiff Seeks Statutory Damages of Twenty-Five ($25.00) Dollars for Each Time Plaintiff and a Class Member Purchased the Product

68.    Plaintiff has suffered monetary damages and is therefore entitled to statutory damages under the Consumer Protection Act.

69.    Plaintiff has suffered damages calculated as "premium price" damages which entitle Plaintiff to seek statutory damages of twenty-five *$25.00) dollars for each time that Plaintiff and a class member purchased the Product.

### Consumer Protection Act, Massachusetts General Laws Chapter 93A Demand Letter

70.    By letter dated May 7, 2021, Plaintiff made a formal demand pursuant to the Consumer Protection Act, Massachusetts General Laws, Chapter 93A, Section 9 requesting that

Defendant cease its deceptive practice and agree to appropriately remunerate Plaintiff and the Class that she seeks to represent.  Defendant did not respond to Plaintiff's thirty (30) day demand letter within the statutory thirty (30) day provision.  However, on June 9, 2021, Plaintiff's counsel received a response from Defendant claiming that they strictly comply with all food labeling laws and regulations and that Plaintiff has no claim.

71.     Plaintiff also seeks injunctive and declaratory relief based upon Defendant's conduct asserted in this Complaint. Defendant's labeling of its Product is misleading to consumers, and injunctive relief is necessary to ensure the cessation of this practice.  Even if Defendant elects to cure the labeling violations alleged in this Complaint, they are not presently enjoined from re-engaging in the deceptive conduct alleged herein.  Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Defendant correctly labels its Product and to prevent Defendant from making the same misleading claims in the future.

**Federal and State, Laws and Regulations Relating to Food Labeling**

**Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*.**

72.     The federal "Food, Drug, and Cosmetic Act," codified at 21 U.S.C. § 301 et. seq., (hereafter also referred to as "FDCA"), is a federal statute that comprehensively but not exclusively regulates the sale of food products to the consuming public.

73.     The FDCA deems food "misbranded" if its labeling is "false or misleading in any particular.  21 U.S.C. § 343(a)(1).

74.     The FDCA defines "food" to include "articles used for food or drink for  man." 21 U.S.C. §§ 321(f).

75.     Ice cream products are considered food according to the FDCA's definition of food.

76.     One of the primary reasons for enacting the FDCA was to prevent misbranding of food product labeling.

77.     The FDCA considers a food product misbranded if "any" representation is false or misleading. Accordingly, it prohibits any statement, design, or device that may deceive or mislead consumers who are misled by such actions.

**Federal Food and Drug Administration's Food Labeling Regulations**

78.     The FDCA gives the federal Food and Drug Administration (hereafter also known as the "FDA") the responsibility to ensure that foods are correctly labeled.   21 U.S.C. § 393(b)(2)(A).

79.     The FDA oversees food labeling in the United States through a detailed and comprehensive regulatory umbrella that includes the FDCA's federal statutes and the FDA's federal regulations.

80.     According to the FDA's authority from the FDCA, the FDA has promulgated comprehensive regulations to implement the FDCA concerning food labeling requirements (hereafter also referred to as "FDA Regulations") 21 C.F.R. § 101.1 *et seq.*

81.     21 C.F.R. § 101.22 contains the federal regulations that apply to food labeling.

82.     21 C.F.R. § 101.22(i) contains the specific regulation that applies when a food label makes a representation about a "primary recognizable flavor(s), by word, vignette, e.g., the depiction of a fruit, or other means."

83.     Also, Massachusetts has expressly adopted the federal labeling requirements. Massachusetts food labeling laws require that all packaged food complies with all labeling requirements in federal food regulation, 21 C.F.R. § 101.22.   See, 105 CMR 590.001; Massachusetts Food Code § 3-201.11 (Massachusetts requires this "to safeguard public health and

provide to consumers food that is safe, unadulterated, and honestly presented."); Massachusetts Food Code § 3-601.12("[f]ood shall be offered for human consumption in a way that does not mislead or misinform the consumer").

84.     The information panel on a food product, which is "that part of the label immediately contiguous and to the right of the principal display panel," 21 C.F.R. § 101.2(a),  must include a "designation of ingredients" that consists of a listing of the food's ingredients "by common or usual name in descending order of predominance." 21 C.F.R. § 101.4(a)(1).

85.     The   FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b). Generally, a food is "misbranded" if, among other things, its labeling is false or misleading."  21 U.S.C. § 343. 21 C.F.R. §101.22 (i)((1)(i) specifically provides:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

> (1)(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

## INGREDIENT VERSUS FLAVOR

86.     Defendant's product is characterized as a Vanilla Bean Ice Cream flavored by  natural "flavor" and does not contain Vanilla Beans.

87.     Some oil, protein, essence, or other extraction of the vanilla bean may have been used to create the Product's natural flavor.  However, that natural flavor does not consist of "vanilla beans," as a reasonable consumer would understand.

88.     Instead, the scientists who created the Product's natural flavor would have isolated proteins from the vanilla bean's cells and tissue or extracted oils or essences from the vanilla bean.

89.     However, because those isolated compounds may not taste like vanilla, the scientist would have combined those extractions with any other extractions from other plants and animals to create a flavoring substance that tastes like vanilla. [7]

90.     Therefore, Defendant must disclose that the Product is flavored on the Product's front label by law.  Defendant has failed to make such a disclosure and therefore is not in compliance with the law.

### FEDERAL AND MASSACHUSETTS FOOD LABELING LAWS ARE IDENTICAL

91.     Plaintiff does not plead, and as a result of this disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Instead, Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state laws or regulations or provide a predicate basis of liability under state law.

92.     Massachusetts law provides that a food is considered misbranded if the food label is false or misleading in any particular, and further incorporates by reference the federal food labeling laws and regulations.

---

[7] https://www.scientificamerican.com/article/what-is-the-difference-be-2002-07-29/ (describing the process for creating natural flavors-last accessed January 28, 2021)

93.     Massachusetts Law mirrors the FDCA and the FDA Regulations.    As a result, Massachusetts food labeling laws and regulations are identical to the federal food labeling laws and regulations.

### Plaintiff is not Attempting to Enforce the FDCA or its Implementing FDA Food Labeling Regulations

94.     Massachusetts has independently and separately enacted state food labeling laws and regulations identical to the FDCA laws and the FDA regulations relating to food labeling.

95.     Plaintiff does not allege causes of action under the FDCA and FDA Regulations.

96.     Plaintiff relies on the FDCA and the FDA Regulations only to the extent that the FDCA and its FDA implementing regulations that have been independently and separately enacted as state food labeling laws and regulations and provide a basis of liability under the Consumer Protection Act.

97.     Plaintiff alleges that Defendant's conduct is not compliant with the FDCA and its implementation of FDA regulations.

98.     Plaintiff does not allege that Defendant's noncompliance with the FDCA and its implementing regulations provide a private right of action against Defendant. However, Plaintiff alleges that because Defendant's conduct is not in compliance with the FDCA and its implementing regulations, Plaintiff does have a private cause of action against Defendant for violation of the Consumer Protection Act.

99.     Plaintiff does not allege claims based on Defendant's noncompliance with the FDCA and its implementation of FDA regulations.  Instead, Plaintiff alleges that Defendant's conduct is not compliant with the FDCA and its implementation of the FDA Regulations and violates the Consumer Protection Act.

100.     Plaintiff does not allege causes of action under the FDCA and FDA Regulations. Instead, Plaintiff relies on the FDCA and the FDA Regulations only to the extent that the FDCA and the FDA Regulations have been independently and separately enacted as state food labeling laws and regulations and further provide a basis of liability under Massachusetts Law.

101.     Plaintiff is not suing because Defendant's conduct violates the FDCA and the FDA Regulations. Instead, Plaintiff is suing for Defendant's conduct that is not in compliance with the FDCA and the FDA Regulations. Therefore, Defendant's conduct violates Massachusetts Consumer Protection Law and provides the basis for Plaintiff's unjust enrichment claim.

**The FDCA and its Implementing FDA Food Labeling Regulations do not Preempt Plaintiff's Consumer Protection Act Claims**

102.     The federal law does not preempt Plaintiff's state law claims because Massachusetts law mirrors federal law. Therefore, Federal and State Food Labeling Laws both identically prohibit misbranded foods.

103.     Since federal and state food labeling laws and regulations identically prohibit misbranded food products, federal food labeling laws and regulations do not preempt claims under the Consumer Protection Act.

104.     Since federal and Massachusetts food labeling laws and regulations identically prohibit misbranded food products, federal food labeling laws and regulations do not preempt Massachusetts food labeling laws and regulations.

**Competitor Products**

**Vanilla Bean Ice Creams Labeled and Marketed by Defendant's Competitors**

105.     Defendant's competitors, identified in Exhibits "C through F," represent their ice cream as vanilla bean ice cream on their product's front labels.  However, unlike Defendant's

Product, as is evident from the competitors' ingredient lists, the competitors' products contain vanilla beans.

106.    The competitor products support the fact that a reasonable consumer would commonly expect that an ice cream product that displays the words "vanilla bean" on its front label would, in fact, contain "vanilla beans" and not "natural flavor" as the ingredient that provides for the ice cream's characterizing vanilla bean flavor.

107.    See Exhibit "C," which depicts an image of the front label of a Hagen-Dazs Vanilla Bean Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

108.    The Hagen-Dazs Vanilla Bean Ice Cream's front label displays the words "Vanilla Bean," and the ingredient list displays the words "Ground Vanilla Beans" and "Vanilla Extract."

109.    The Haagen-Dazs Vanilla Bean Ice Cream is a product that, like Defendant's Product, displays the words vanilla bean on the product's front label as one of the ingredients responsible for the product's characterizing vanilla bean flavor.

110.    However, unlike Defendant's Product, the Haagen-Dazs Vanilla Bean Ice Cream displays the words "Ground Vanilla Beans" on its ingredient list.

111.    Unlike Defendant's Product, vanilla bean is one of the ingredients responsible for Haagen-Dazs Vanilla Bean Ice Cream's characterizing vanilla bean flavor.

112.    Therefore, the Haagen-Dazs Vanilla Bean Ice Cream is lawfully labeled and not misbranded.

113.    See Exhibit "D," which depicts an image of the front label of a Halo Top Vanilla Bean Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

114.    The Halo Top Vanilla Bean Ice Cream's front label displays the words "Vanilla Bean," and the ingredient list displays the words "Vanilla Beans" and "Natural Flavor."

115.    The  Halo Top Vanilla Bean Ice Cream is a product that, like Defendant's Product, displays the words vanilla bean on the product's front label as one of the ingredients responsible for the product's characterizing vanilla bean flavor.

116.    However, unlike Defendant's Product, the Halo Top Vanilla Bean Ice Cream displays the words "Vanilla Beans" on its ingredient list.

117.    Unlike Defendant's Product, vanilla bean is one of the ingredients responsible for the HaloTop Vanilla Bean Ice Cream's characterizing vanilla bean flavor.

118.    Therefore, the Halo Top Vanilla Bean Ice Cream is lawfully labeled and not misbranded.

119.    See Exhibit "E," which depicts an image of the front label of a Tillamook Vanilla Bean Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

120.    The Tillamook Vanilla Bean Ice Cream's front label displays the words "Vanilla Bean," and the ingredient list displays the words "Vanilla Bean Seeds" and "Natural Vanilla Flavor" and "Natural Flavor."

121.    The Tillamook Vanilla Bean Ice Cream is a product that, like Defendant's Product, displays the words vanilla bean on the product's front label as one of the ingredients responsible for the product's characterizing vanilla bean flavor.

122.    However, unlike Defendant's Product, the Tillamook Vanilla Bean Ice Cream displays the words "Vanilla Bean Seeds" on its ingredient list.

123.    Unlike Defenant\s Product, vanilla bean is one of the ingredients responsible for the Tillamook Vanilla Bean Ice Cream's characterizing vanilla bean flavor.

124.    Therefore, the Tillamook Vanilla Bean Ice Cream is lawfully labeled and not misbranded.

125.    See Exhibit "F," which depicts an image of the front label of a Clover Sonoma Vanilla Bean Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

126.    The   Clover Sonoma Vanilla Bean Ice Cream's front label displays the words "Vanilla Bean" ice cream, and the ingredient list displays the words "Ground Vanilla Beans" and "Vanilla Extract."

127.    The Clover Sonoma Vanilla Bean Ice Cream is a product that, like Defendant's Product, displays the words "Vanilla Bean" on the product's front label as one of the ingredients responsible for the product's characterizing vanilla flavor.

128.    However, unlike Defendant's Product, the Clover Sonoma Vanilla Bean Ice Cream displays the words "Ground Vanilla Beans" on its ingredient list.

129.    Unlike Defendant's Product, vanilla bean is one of the ingredients responsible for the Clover Sonoma Vanilla Bean Ice Cream's characterizing vanilla bean flavor.

130.    Therefore, the Clover Sonoma Vanilla Bean Ice Cream is lawfully labeled and not misbranded.

131.    See Exhibit "G," which depicts an image of the front label of a "Favorite Day Vanilla Bean Naturally Flavored Ice Cream," as well as a list of its ingredients as identified on the label located on its backside.

132.    The Favorite Day Vanilla Bean Naturally Flavored Ice Cream's front label displays the words "Vanilla Bean **Naturally Flavored** (emphasis added)" ice cream, and the ingredient list displays the words "Natural Vanilla Flavor With Vanilla Bean Specks."

133.    "Natural Vanilla Bean Flavor With Vanilla Bean Specks" is a flavor ingredient and not real vanilla beans as an ingredient.

21

134.     Unlike Defendant's Product, the Favorite Day Vanilla Bean Naturally Flavored Ice Cream is a product that displays the words "Naturally Flavored" on the product's front label.

135.     Therefore, the Favorite Day Vanilla Bean Naturally Flavored Ice Cream is lawfully labeled and not misbranded because it discloses on its front label, by use of the words "Naturally Flavored," that vanilla bean as an ingredient is not one of its ingredients contributing to its characterizing vanilla bean flavor.

136.     See Exhibit "H," which depicts an image of the front label of a Blue Bunny Vanilla Bean Flavored Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

137.     The Blue Bunny Vanilla Bean Flavored Ice Cream's front label displays the words "Vanilla Bean **Flavored** (emphasis added)" ice cream, and the ingredient list displays the words "Natural Flavors (With Vanilla Extract)" and "Vanilla Bean Specks."

138.     "Natural Flavors (With Vanilla Extract)" and "Vanilla Bean Specks" are flavor ingredients and not real vanilla beans as an ingredient.

139.     Unlike Defendant's Product, the Blue Bunny Vanilla Bean Flavored Ice Cream is a product that displays the word "Flavored" on the product's front label.

140.     Therefore, the Blue Bunny Vanilla Bean Flavored Ice Cream's is lawfully labeled and not misbranded because it discloses on its front label, by use of the word "Flavored," that vanilla bean as an ingredient is not one of its ingredients contributing to its characterizing vanilla bean flavor.

141.     See Exhibit "I," which depicts an image of the front label of a Signature Select Vanilla Bean Flavored Ice Cream, as well as a list of its ingredients as identified on the label located on its backside.

142.     The Signature Select Vanilla Bean Flavored Ice Cream's front label displays the words "Vanilla Bean **Flavored** (emphasis added)" ice cream, and the ingredient list displays the words "Natural Vanilla Flavor" and "Ground Vanilla Bean Specks."

143.     "Natural Vanilla Flavor" and Vanilla Bean Specks" are flavor ingredients and not real vanilla beans as an ingredient.

144.     Unlike Defendant's Product, the Signature Select Vanilla Bean Flavored Ice Cream is a product that displays the word "Flavored" on the product's front label.

145.     Therefore, the Signature Select Vanilla Bean Flavored Ice Cream is lawfully labeled and not misbranded because it discloses on its front label, by use of the word "Flavored," that vanilla bean as an ingredient is not one of its ingredients contributing to its characterizing vanilla bean flavor.

## CLASS ACTION ALLEGATIONS

146.     Plaintiff brings this action on behalf of herself and on behalf of all other individual Massachusetts consumers who purchased Defendant's Product. The Class Period is limited to the statute of limitations applicable to the cause of action. Plaintiff brings this class action lawsuit pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), and 23(b)(3). Excluded from the Class are Defendant and its employees, principals, affiliated entities, legal representatives, successors, and assigns.

147.     Upon information and belief, thousands of Class members are geographically dispersed throughout Massachusetts.  Therefore, individual joinder of all members of the Class would be impracticable.

148.     Common questions of law or fact exist as to all members of the Class.  These questions predominate over the questions affecting only individual class members.  These common

legal or factual questions include: (1) whether Defendant's labeling of its Product is likely to deceive class members; (2) whether Defendant's representations are unlawful; and (3) the appropriate measure of damages and restitution.

149.     Plaintiff's claims are typical of the Class's claims. Plaintiff was a consumer who purchased Defendant's Product in Massachusetts characterized by a specific ingredient yet did not contain that ingredient.  Instead, it was flavored – a fact that was not disclosed on the Product's front label. Therefore, Plaintiff is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

150.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the Class members' interests she seeks to represent. She has retained Counsel competent and experienced in conducting complex class action litigation.  Plaintiff and her counsel will adequately protect the interests of the Class.

151.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.

152.     Moreover, even if Class members could afford individual actions, it would still not be preferable to classwide litigation.  Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

153.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief for the Class.

## COUNT I

**(Consumer Protection Act, Massachusetts General Laws Chapter 93A, § 2, § 9)**

154.     Plaintiff alleges and incorporates by reference the allegations in all of this Complaint's preceding paragraphs as though fully set forth therein.

155.     Defendant's conduct, as alleged herein, constitutes unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of the Consumer Protection Act, M.G.L., c. 93A, § 2, and the regulations promulgated thereunder, including without limitation, 940 C.M.R. §§ 3.02, 3.05(1), 3.05(2), 3.16(2), 3.16(3) and 3.16(4).

156.     Under M.G.L., c. 93A, § 9(3), on May 7, 2021, a proper written demand for relief was made on Defendant under the Consumer Protection Act, M.G.L., Chapter 93A, on behalf of Plaintiff and the Class. Defendant did not make an offer of relief to Plaintiff or the Class.

157.     The Consumer Protection Act, M.G.L., c. 93A § 2, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

158.     The Consumer Protection Act, M.G.L., c. 93A § 9, permits any consumer injured by a violation of M.G.L., c. 93A §2 to bring a civil action, including a class action, for damages and injunctive relief.

159.     Defendant engaged in unfair and deceptive acts and practices in the conduct of trade or commerce in violation of the Consumer Protection Act, M.G.L., c. 93A § 2.

160.   Defendant's unfair and deceptive scheme to mislead consumers was comprised of unfair and deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and the Class, through its labeling of the Products, that they contained their characterizing ingredients when, in fact, they did not. This unfair and deceptive act and practice has the capacity, tendency, and is likely to deceive or mislead reasonable consumers.

161.   Defendant's conduct, as alleged herein, violates various regulations promulgated by the Massachusetts Attorney General according to c. 93A, § 2(c), including the following: a. 940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered); b. 940 C.M.R.§ 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect"); c. 940 C.M.R. §3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale"); d. 940 C.M.R. § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction"); and e. 940 C.M.R. § 3.16(3) (providing that an act or practice violates c. 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection").

162.   Defendant has mislabeled and misbranded the Product in violation of various state and federal statutes and regulations, including a. Mass. Gen. Laws, c. 94, § 187 (providing that

food shall be misbranded when (1) "its labeling is false or misleading in any particular;" and (2) "it is in imitation or semblance of any other food" and does not bear in type of uniform size and prominence, the word "imitation") and §190 (barring the manufacture, sale, delivery or offer of delivery of misbranded food); b. Code of Federal Regulations, 21 U.S.C. § 343; c. Code of Federal Regulations, 21 CFR § 101.22;

163.     Such mislabeling and misbranding constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

164.     According to 940 C.M.R. § 3.16(3) and § 3.16(4), violations of the foregoing provisions also violate the Consumer Protection Act, c. 93A, § 2.

165.     Defendant's violations of the Consumer Protection Act, M.G.L., c. 93A were willful and knowing.

166.     As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Class were injured and suffered damages and are entitled to actual or statutory damages, treble damages, attorneys' fees, and costs. The injuries suffered by Plaintiff and the Class include, but are not limited to, paying for Defendant's Products, paying a premium price for Defendant's falsely advertised coffees, and by the unlawful profits Defendant earned from the sales of these falsely advertised Products.

167.     Plaintiff and each Class Members were injured by Defendant's unlawful conduct, in that they paid for products that were not sold as represented.

168.     Had Plaintiff known that the Product label was inaccurate, Plaintiff would not have purchased the Product at all or would not have purchased the Product at the price she paid.

169.     As alleged herein, Defendant's unfair or deceptive acts or practices were willful or knowing violations of the Consumer Protection Act, c. 93A, § 2, within the meaning of c. 93A, § 9(3).

170.     According to M.G.L. c. 93A, § 9, Plaintiff and each Class Member are entitled to recover their actual damages or statutory damages of $25.00 each, whichever results in a greater recovery, plus their reasonable attorneys' fees and the costs of this action.

171.     Plaintiff and the Class Members are also entitled to injunctive relief in the form of an order directing Defendant to cease their false and misleading labeling and advertising and retrieve existing false and misleading advertising and promotional materials and publish corrective advertising.

## COUNT II

**(Untrue and Misleading Advertising under M.G.L. c. 266, § 91)**

172.     Plaintiff alleges and incorporates by reference the allegations in all of this Complaint's preceding paragraphs as though fully set forth therein.

173.     Defendant's labeling, advertising, promotion, and marketing of its Products are untrue, deceptive, and misleading, in violation of M.G.L. c. 266, § 91.  At all times relevant to this action, Defendant knew, or could, upon reasonable investigation, have ascertained that their labeling, advertising, marketing, and promotion of the product was untrue, deceptive, and misleading.

174.     Defendant's false, deceptive labeling, advertising, marketing, and promotion of the product has continued throughout the Class Period.

175.     As purchasers of the product who were aggrieved by Defendant's false and misleading advertising (Class members purchased product(s) that did not conform to the

representations made about it by Defendant), Plaintiff brings this class action to seek all available remedies under M.G.L. c. 266, § 91, including injunctive relief. The injunctive relief would include an order directing Defendant to cease their false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

**COUNT III**

**(Unjust Enrichment)**

176.    Plaintiff alleges and incorporates by reference the allegations in all of this Complaint's preceding paragraphs as though fully set forth therein.

177.    Plaintiff asserts this claim in the alternative on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

178.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched. Expressly, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and the Class).  The defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

179.    It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration, and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling the coffees.

180.    On behalf of herself and all others similarly situated, Plaintiff seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

    a.  Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and her counsel as Class Counsel;

    b.  Actual damages or statutory damages, whichever results in a greater recovery to Plaintiff and the proposed Class Members;

    c.  Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;

    d.  Statutory pre-judgment and post-judgment interest on any amounts;

    e.  Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

    f.  Such other relief as the Court may deem just and proper.

Dated: June 11, 2021

*/s/ John T. Longo*
John T. Longo, Esq. MA BBO 632387
Law Office of John T. Longo
177 Huntington Avenue, 17th Fl, Suite 5
Boston, MA 02115
Phone (617) 863-7550
jtlongo@jtlongolaw.com


Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
(RI Bar No. 3351)
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimle: (401) 861-6064
Email: pnwlaw@aol.com
(Pending Pro Hac Vice Motion)